IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Civil Action No. 24-cv-00071-NYW

T.G.R., on behalf of E.S.G.R.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

## MEMORANDUM OPINION AND ORDER

This civil action arises under Title XVI of the Social Security Act (the "Act") for review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner" or "Defendant"). Plaintiff T.G.R., on behalf of her minor child E.S.G.R., appeals the Commissioner's final decision denying her application for Supplemental Social Security Income ("SSI"). For the reasons set forth in this Order, the Commissioner's decision is respectfully **AFFIRMED**.

## LEGAL STANDARDS

Supplemental security income "assure[s] a minimum level of income for people . . . who are blind or disabled and who do not have sufficient income and resources to maintain a standard of living at the established Federal minimum income level." 20

---

[1] The Local Rules provide that "[a]n order resolving a social security appeal on the merits shall identify the plaintiff by initials only." D.C.COLO.LAPR 5.2(b). In addition, Federal Rule of Civil Procedure 5.2 states that court filings containing "the name of an individual known to be a minor" shall include only the minor's initials. Fed. R. Civ. P. 5.2(a)(3). Accordingly, the Court refers to T.G.R. and E.S.G.R. using their initials.

C.F.R. § 416.110.  To qualify for SSI benefits, an individual must be disabled as defined in the Act.  A person under the age of 18 is considered "disabled" if the individual "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(i).

There is an established "three-step process for assessing whether a child is disabled under this definition."  *Panas ex rel. M.E.M. v. Commissioner*, 775 F. App'x 430, 434 (10th Cir. 2019).  The three steps require the following determinations:

1. Whether the child has engaged in substantial gainful activity;

2. Whether the child has an impairment or combination of impairments that is severe; and

3. Whether the child's impairment meets or functionally equals an impairment listed in Appendix 1, Subpart P of 20 C.F.R. Part 404.

*Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1237 (10th Cir. 2001) (citing 20 C.F.R. § 416.924(a)).  If an administrative law judge ("ALJ") determines at step one that the minor is engaged in substantial gainful activity, or decides at step two that the minor's impairments are not severe, then the ALJ "will determine that [the claimant is] not disabled and not review [the] claim further."  20 C.F.R. § 416.924(a).

If the ALJ finds at step three that the minor's impairments do not meet or medically equal a listed impairment, the ALJ must still assess "whether the impairment is functionally equivalent to a listing."  *Leyba ex rel. C.J.L. v. Astrue*, 803 F. Supp. 2d 1259, 1262 (D. Colo. 2011) (citing 20 C.F.R. § 416.926a).  This requires the ALJ to "analyze the impairment's severity in six age-appropriate domains:  (1) acquiring and using

2

information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being." *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014) (citing 20 C.F.R. 416.926a(b)(1)).  An impairment is functionally equivalent to a listed impairment if it results in a "marked" limitation in two of the six domains or an "extreme" limitation in one domain.  20 C.F.R. 416.926a(d).  A "marked" limitation exists when the child's impairments "interfere[] seriously with [the child's] ability to independently initiate, sustain, or complete activities."  *Id.* § 416.926a(e)(2)(i).

## BACKGROUND

E.S.G.R. was born in April 2009.  [Doc. 9 at 187, 205].[2]  In May 2018, he was diagnosed with disruptive mood dysregulation disorder ("DMDD").  [*Id.* at 339].  This diagnosis was reaffirmed in January 2020, at which time E.S.G.R. was also diagnosed with attention deficit/hyperactivity disorder ("ADHD").  [*Id.* at 578–79].  He was diagnosed with major depressive disorder in August 2021.  [*Id.* at 275, 637].  From 2020 to 2023, E.S.G.R. was on and off medication for his ADHD, and also self-medicated with marijuana, but he stopped taking his ADHD medication sometime before August 2023.  [*Id.* at 39–40, 46, 545, 555, 620, 893].  At various times between 2020 and 2023, E.S.G.R. reported thoughts of suicidal ideation.  [*Id.* at 622, 626, 701–02, 885].

E.S.G.R. experienced behavioral issues at home and at school.  *See, e.g.*, [*id.* at 216–17, 227, 251–52, 290].  In October 2021, E.S.G.R. received an in-school

---

[2] When citing to the Administrative Record, the Court cites to the docket number assigned by the CM/ECF system and the page number associated with the Administrative Record, which is found in the bottom right-hand corner of each page.  For all other documents, the Court cites to the docket and page number generated by the CM/ECF system, rather than the page numbers assigned by the Parties.

3

suspension due to a verbal argument in class, and he received an out-of-school suspension the next month following a physical altercation. [*Id.* at 295]. School records reflect that E.S.G.R. was absent for 88 days during the 2020–2021 school year and for 52 days in the 2021–2022 school year. [*Id.* at 291].

E.S.G.R. began seeing a counselor named Marisa Taylor ("Ms. Taylor") in February 2020 for psychotherapy. [*Id.* at 576–78]. In 2021 and 2022, Ms. Taylor observed that E.S.G.R.'s diagnoses can negatively interfere with his well-being, social life, academic performance, and social skills. [*Id.* at 600, 637]. In March 2022, Ms. Taylor sent a letter to E.S.G.R.'s school opining that he required a Section 504 plan.[3] [*Id.* at 638–40]. And in late 2023, Ms. Taylor sent another letter requesting that E.S.G.R. be given an individualized education program ("IEP"). [*Id.* at 1–2]. Neither an IEP nor a Section 504 plan were ever implemented for E.S.G.R. at school. [*Id.* at 220, 222, 894].

In October 2020, T.G.R. applied for SSI benefits on behalf of E.S.G.R. [*Id.* at 187–92]. The Social Security Administration ("SSA") denied the application on April 15, 2021 after concluding that E.S.G.R. is not disabled. [*Id.* at 59, 70–72]. The SSA affirmed the denial on reconsideration. [*Id.* at 85–91]. T.G.R. then requested a hearing on the matter, [*id.* at 108, 112], and a hearing was convened before ALJ Jennifer Smiley ("the ALJ") on August 14, 2023, [*id.* at 30–53].[4]

---

[3] A Section 504 plan "is designed to meet a child's educational needs even if they are not provided with special education services." *Bridges ex rel. R.M.B. v. Commissioner*, 814 F. App'x 362, 366 (10th Cir. 2020) (citing SSR 09-2p, 2009 WL 396032, at *10 (S.S.A. Feb. 18, 2009)).

[4] A hearing was originally convened before ALJ Erin Justice ("ALJ Justice") on May 9, 2023. *See* [Doc. 9 at 54–58]. At that hearing, ALJ Justice asked T.G.R. if she would like to postpone the hearing to permit her to hire a representative, [*id.* at 56], and T.G.R. asked to postpone the hearing so she could get her documents together, [*id.* at 57]. ALJ Justice permitted a postponement of the hearing. [*Id.* at 58].

4

On September 29, 2023, the ALJ issued a decision denying T.G.R.'s request for benefits.  [*Id.* at 16–24].  In her decision, the ALJ found that E.S.G.R. was a school-aged child on the date the SSI application was filed, was presently an adolescent,[5] and had not engaged in substantial gainful activity since the application date.  [*Id.* at 17].  The ALJ determined that E.S.G.R. has the following severe impairments:  DMDD, ADHD, and depressive disorder.  [*Id.*].[6]  However, the ALJ also concluded that E.S.G.R. does not have an impairment or combination of impairments that meets, medically equals, or functionally equals the severity of a listed impairment.  [*Id.* at 17–18].  Specifically, with respect to the six domains of functioning listed in 20 C.F.R. § 416.926a, the ALJ determined that E.S.G.R. has:

1. Less than a marked limitation in acquiring and using information;
2. Less than a marked limitation in attending and completing tasks;
3. Less than a marked limitation in interacting and relating with others;
4. No limitation in moving about and manipulating objects;
5. Less than a marked limitation in the ability to care for himself; and
6. No limitation in health and physical well-being.

---

[5] A school-age child is a child older than 6 but not yet 12; an adolescent is a child older than 12 but not yet 18.  20 C.F.R. § 416.926a(g)(2)(iv)–(v).

[6] Plaintiff's counsel states that the ALJ found that E.S.G.R. had severe impairments of, inter alia, oppositional defiant disorder and post-traumatic stress disorder.  [Doc. 12 at 8–9].  This is not an accurate account of the ALJ's decision, which does not find that E.S.G.R. has either of these impairments.  [Doc. 9 at 17].  Similarly, Plaintiff's counsel states that the ALJ "[found] that [E.S.G.R.] was born on January 6, 2012."  [Doc. 12 at 8].  But the ALJ correctly found that E.S.G.R. was born in April 2009.  [Doc. 9 at 17].  Counsel's inaccurate recitation of basic, but highly relevant, background facts falls below the standard this Court expects of attorneys practicing in federal court.

[*Id.* at 19]. Based on these findings, the ALJ concluded that E.S.G.R. was not disabled as defined in the Act. [*Id.* at 24].

T.G.R.'s request for review of the ALJ's decision was denied by the Appeals Council on November 17, 2023, [*id.* at 3–5], which rendered the ALJ's decision the final decision of the Commissioner. On January 10, 2024, T.G.R., on behalf of E.S.G.R., sought judicial review of the Commissioner's decision in the United States District Court for the District of Colorado. [Doc. 1]. This matter is now ripe for disposition.

## STANDARD OF REVIEW

In reviewing the Commissioner's decision, the Court limits its inquiry to whether the decision is supported by substantial evidence and whether the Commissioner applied the correct legal standards. *See Vallejo v. Berryhill*, 849 F.3d 951, 954 (10th Cir. 2017). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (quotation omitted), and evidence is not substantial "if it is overwhelmed by other evidence in the record or constitutes mere conclusion," *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). In conducting this review, the Court cannot reweigh the evidence or substitute its judgment for that of the Commissioner. *Knight*, 756 F.3d at 1175.

## ANALYSIS

T.G.R. raises two issues on appeal. First, she contends that the ALJ's decision at step three—that E.S.G.R. does not have at least two marked limitations in the six relevant domains, such that he does not have an impairment or combination of impairments that functionally equals a listed impairment—was not supported by

6

substantial evidence. [Doc. 12 at 9–15]. Then, she challenges the ALJ's evaluation that her testimony was not entirely consistent with the record. [*Id.* at 15–17].

## I. E.S.G.R.'s Limitations

At step three, the ALJ concluded that T.G.R. has a less than marked limitation in four functional domains and no limitation in the remaining two functional domains. [Doc. 9 at 19]. T.G.R. argues that the ALJ's decision at step three was not supported by substantial evidence, focusing on two functional domains: interacting and relating with others and caring for oneself. [Doc. 12 at 9]. She argues that E.S.G.R. has at least marked limitations in these domains and that the ALJ "either chose to ignore or . . . failed to give appropriate weight to any evidence in the record supporting any findings contrary to her own opinion." [*Id.*]. To support this assertion, T.G.R. reiterates her presentation of the factual background, *see* [*id.* at 10–11], and then lists evidence that she believes shows that E.S.G.R. is markedly limited in these two domains, [*id.* at 12–14].[7]

***Interacting and Relating With Others.*** This domain relates to a minor's ability to "initiate and respond to exchanges with other people, and to form and sustain

---

[7] T.G.R. also cursorily asserts that the ALJ failed to comply with SSR 09-1P, which requires a "whole child" approach in evaluating a child's claim for benefits. *See* [Doc. 12 at 11]; *see also Willis ex rel. M.A.W. v. Astrue*, No. 10-cv-02295-WJM, 2012 WL 1601562, at *7 (D. Colo. May 8, 2012) ("The social security regulations provide that the functional equivalence to a listed impairment be evaluated using the 'Whole Child' approach, which requires consideration of 'how the child functions every day and in all settings compared to other children the same age who do not have impairments.'" (quoting SSR 09-1P, 2009 WL 396031, at *2 (S.S.A. Feb. 17, 2009))). But beyond asserting that the ALJ "failed to follow this formula when she evaluated [E.S.G.R.] and his severe impairments," T.G.R. makes no argument explaining how the ALJ failed to incorporate this approach in her decision. *See* [Doc. 9 at 9–15]. Accordingly, the Court does not address this argument, which is not properly before the Court. *See United States v. Ray*, 899 F.3d 852, 862 n.4 (10th Cir. 2018) ("[A]rguments made in a cursory manner . . . are waived.").

7

relationships with family members, friends, and others." SSR 09-5P, 2009 WL 396026, at *2 (S.S.A. Feb. 17, 2009). To assess whether the minor claimant is limited in this respect, the ALJ must "consider how well the claimant initiates and sustains emotional connection with others; develops and uses the language of claimant's community; cooperates with others; complies with rules; responds to criticism; and respects and takes care of the possessions of others." *Cayla D. ex rel. K.D.J. v. Saul*, No. 18-cv-00104-GKF-JFJ, 2019 WL 5847881, at *3 (N.D. Okla. Sept. 5, 2019) (citing 20 C.F.R. § 416.926a(i)).

The ALJ concluded that E.S.G.R. is "most limited" in his ability to interact with and relate to others. [Doc. 9 at 20]. She noted that his school records list "some occasional issues" in terms of verbal and physical altercations with others, for which E.S.G.R. was disciplined. [*Id.*]. But the ALJ also recognized that, based on the records, "these incidents involve[d] mutual actions from both the claimant and other involved parties," such that they were not the result of "[E.S.G.R.] instigating conflicts out of the blue." [*Id.* at 20–21]. The ALJ also noted that while E.S.G.R.'s behavior interfered with his learning in math class, "none of his other teachers reported such issues," and E.S.G.R.'s social studies teacher "noted that the claimant had no limitation in the domain of interacting and relating with others." [*Id.* at 21]. As for E.S.G.R.'s home life, the ALJ discussed therapy notes documenting E.S.G.R.'s disruptive outbursts, but found that these outbursts could be explained by E.S.G.R. no longer taking his medication. [*Id.*]. The ALJ also discussed records demonstrating a cycle where E.S.G.R.'s mood and behavior improved when he had a girlfriend, but after breaking up with his girlfriend, "his depression and anger worsened." [*Id.*]. He had "positive interactions with peers with

8

stable, appropriate mental status examination findings" from December 2022 through early March 2023.  [*Id.*].

The ALJ concluded that the record evidence was consistent with a less than marked limitation in interacting and relating with others.  [*Id.*].  The ALJ acknowledged E.S.G.R.'s mood cycling and varying ability to interact with his peers, but remarked that his difficulty in managing emotions was "like many pre-teens and teenagers" and concluded that the evidence did not show a consistency or severity "to an extent that his difficulties in this area are markedly impaired as compared to an individual of the claimant's age."  [*Id.*].

T.G.R. takes issue with this conclusion.  She directs the Court to evidence of E.S.G.R.'s school disciplinary issues, that his "behavior interfer[ed] with his learning," and that he "exhibited disruptive behavior at home and in May 2022 he [had] conflicts with a teacher." [Doc. 12 at 12].  She concludes that "a child who ha[s] the[se] difficulties . . . regarding his inability to interact and relate with others clearly has a marked limitation in the functional domain of interacting and relating with others" and that E.S.G.R.'s "inability to interact and relate with others was seriously interfering with his ability to independently initiate, sustain or complete activities."  [*Id.*].

The Court is respectfully unpersuaded by this argument.  T.G.R. simply points to evidence that she believes supports finding a marked limitation and asks the Court to overturn the ALJ's assessment of this evidence.  But the Court's role is "limited to determining whether substantial evidence supports the ALJ's decision; [the Court does] not reweigh the evidence."  *Knight*, 756 F.3d at 1176; *see also J.S.M. v. Kijakazi*, No. 22-cv-00884-RM, 2023 WL 2033747, at *3 (D. Colo. Feb. 15, 2023) ("Even if different

conclusions could be drawn from the evidence, the Court's role is to review merely the sufficiency of the evidence, not its weight."). The limited question before the Court is whether the ALJ's decision is supported by "evidence a reasonable mind would accept as adequate to support a conclusion." *Leyba*, 803 F. Supp. 2d at 1262.

The ALJ considered and discussed the evidence highlighted by T.G.R. in her brief. *See* [Doc. 9 at 20–21]. But the ALJ also explained why, when considered against conflicting evidence, she did not believe this evidence showed a marked impairment as compared to other individuals of the claimant's age. For example, with respect to T.G.R.'s assertion that E.S.G.R.'s "behavior interfer[ed] with his learning" and that this supports a marked limitation, [Doc. 12 at 12], the ALJ noted records showing that E.S.G.R.'s behavior interfered with his ability to learn in math class, [Doc. 9 at 21]; *see also* [*id.* at 319], but she also noted that "none of [E.S.G.R.'s] other teachers reported such issues," [*id.* at 21]. As for E.S.G.R.'s behavioral issues at home, the ALJ discussed at length E.S.G.R.'s cycling of moods and his improvements and setbacks, and ultimately concluded that his disruptive periods were not of the severity or consistency required to find a marked limitation. [*Id.* at 21–22]

The Court has reviewed the record and finds that a reasonable mind could accept the ALJ's cited evidence as adequate to support her decision. *Leyba*, 803 F. Supp. 2d at 1262. Accordingly, substantial evidence supports the ALJ's conclusion that E.S.G.R. was less than markedly limited in his ability to interact and relate with others.

**Caring for Oneself.** T.G.R. also argues that "[t]he ALJ incorrectly found that [E.S.G.R.] ha[s] a less than marked limitation" in the domain of caring for oneself. [Doc. 12 at 13]. "This domain focuses on the child's personal needs, health and safety."

*Knight*, 756 F.3d at 1177–78 (quotation omitted).  It includes the ability to regulate one's feelings, thoughts, urges, and intentions; responding to one's circumstances in appropriate ways; making decisions to not endanger oneself; and knowing when to ask for help.  20 C.F.R. § 416.926a(k)(1)(iii)–(iv).  Engaging in self-injurious behavior is an example of limited functioning in this domain.  *Id.* § 416.926a(k)(3)(iv).

The ALJ concluded that E.S.G.R. has a less than marked limitation in this domain.  [Doc. 9 at 23].  The ALJ noted E.S.G.R.'s reports of suicidal ideation and self-harm and "acknowledge[d] the severity of" this evidence, but she also observed that E.S.G.R. "has . . . denied any plan to follow through on such thoughts" and that self-harm "was only reported on one occasion in December 2021."  [*Id.*].  She found that "the episodic and isolated nature of such symptoms and incidents is inconsistent with a marke[d] limitation," given that the T.G.R.'s claim involved over three years of records.  [*Id.*].  The ALJ also highlighted the "largely normal judgment and insight observed in mental status evaluations combined with the apparent lack of need for any support structures in the school setting" and found these factors "inconsistent with a marked limitation in this domain."  [*Id.*].

In arguing that the ALJ's decision is not supported by substantial evidence, T.G.R. again highlights the evidence she believes supports finding a marked limitation in this domain:  (1) E.S.G.R.'s suicidal ideation and (2) Ms. Taylor's letters opining that E.S.G.R. needs additional support structures at school.  [Doc. 12 at 13–14].  T.G.R. concludes that "[b]ased on [E.S.G.R.'s] continuing thoughts of self-harm, the ALJ incorrectly found that [E.S.G.R.] did not have a marked limitation in this functional domain."  [*Id.* at 14].

The Court respectfully disagrees with T.G.R.'s argument. The Court has reviewed the record and concludes that the ALJ's decision that E.S.G.R. is not markedly limited in this domain is supported by substantial evidence. As the ALJ noted, *see* [Doc. 9 at 23], although there are reports of E.S.G.R.'s suicidal ideation, these periods could reasonably be construed as episodic, and E.S.G.R. also denied, on multiple occasions, any plans to follow through on his thoughts, *see* [*id.* at 622 (in June 2021, E.S.G.R. reporting that he "wish[ed] to be dead or not alive anymore, or wish[ed] to fall asleep and not wake up" but also reporting that he did not actually think of committing suicide); *id.* at 626 (reports of suicidal ideation from June 2021 but "no intent to harm self or others at this time"); *id.* at 701–02 (in June 2023, noting that E.S.G.R. had depressive symptoms, but denied suicidal ideation); *id.* at 727–28 (suicidal ideation but no intent in May 2023); *id.* at 885 (suicidal ideation with no intent in July 2023)]; *but see also* [*id.* at 933 (denying suicidal ideation in May 2023); *id.* at 935, 938, 940, 943 (same, February 2023); *id.* at 945, 948, 950, 953 (same, January 2023); *id.* at 955, 958, 960 (same, December 2022)].[8]

The Court does not discount or diminish the seriousness of E.S.G.R.'s thoughts of self-harm. But the Court's limited duty is to review whether the ALJ's decision is supported by substantial evidence, and the Court "will not disturb the ALJ's findings based merely on the possibility that the ALJ could have arrived at a different conclusion." *Oneal v. Commissioner*, No. 22-1102, 2023 WL 2822123, at *2 (10th Cir. Apr. 7, 2023).

---

[8] The ALJ cited this evidence elsewhere in her decision. *See* [Doc. 9 at 25 (citing [*id.* at 931–60])]; *see also Endriss v. Astrue*, 506 F. App'x 772, 777 (10th Cir. 2012) (concluding that there the ALJ "set forth a summary of the relevant . . . evidence earlier in his decision," the ALJ was not required to recite the same evidence later); *Robinson v. Barnhart*, 366 F.3d 1078, 1084–85 (10th Cir. 2004) (an ALJ's decision must be evaluated "based solely on the reasons stated in the decision").

Here, the ALJ did not ignore evidence of E.S.G.R.'s suicidal ideation; she weighed that evidence against conflicting evidence and concluded that the record did not support a marked limitation in this domain. *Compare* [Doc. 9 at 23–25], *with Knight*, 756 F.3d at 1178 (ALJ's finding that the claimant was less than markedly impaired in caring for herself was not supported by substantial evidence because the ALJ explained away the claimant's suicidal ideation by simply stating that it was "being addressed with therapy").

T.G.R. also argues that although E.S.G.R.'s school "had not introduced any support structures, [E.S.G.R.'s] treating counselor submitted several letters outlining his need for the same." [Doc. 12 at 13]. Recall, the ALJ concluded in her decision that there was an "apparent lack of need for any support structures in the school setting," which she found was inconsistent with a marked limitation in the domain of caring for oneself. [Doc. 9 at 23]. But the ALJ explained why she found Ms. Taylor's letters unpersuasive: the letters "provide[d] little meaningful insight into [E.S.G.R.'s] degree of limitation" because none of the letters "include[d] any specificity as to the degree of impairment, nor citation to any specific examples." [*Id.* at 23–24]. The ALJ also acknowledged that Ms. Taylor requested that E.S.G.R. be evaluated for a Section 504 plan and that a plan be implemented. [*Id.* at 24 (citing [*id.* at 638–40])]. However, the ALJ also noted:

> To date, no 504 plan or IEP has been implemented, and there is no indication beyond the comment from the claimant's math teacher related to behavior interfering with learning that a support plan has been hinted at by anyone involved with the claimant's education. Given the reports (or lack thereof) from his teachers outside of his math teacher, a reasonable conclusion can be drawn that an assessment by the school was made that found the claimant's limitations are not so severe as to require individualized support. Accordingly, I find the statements in the 504 request letter to be unpersuasive. Furthermore, even if I did find the statement persuasive, the need for an IEP or 504 [plan] in itself is not tantamount to a conclusion that the claimant meets, medically equals, or functionally equals a listing, and

13

> therefore the conclusion from his provider that a 504 [plan] may be appropriate in itself does not equate to a finding of disability.

[*Id.*].  The ALJ carefully explained why she found Ms. Taylor's letters unpersuasive, and T.G.R. does not take specific issue with the ALJ's conclusion that the letters were unpersuasive.  *See* [Doc. 12 at 12–15]; *cf. Tomi L. H. v. Kijakazi*, No. 20-cv-01259-JWL, 2021 WL 5161758, at *6 (D. Kan. Nov. 5, 2021) (affirming the Commissioner's decision where the ALJ "explained his reasons for finding the physicians' opinions not persuasive and those reasons are supported by record evidence").

For these reasons, and upon review of the entire record, the Court concludes that the ALJ's decision that E.S.G.R. has a less than marked limitation in his ability to care for himself is supported by substantial evidence.

## II.     Consistency Determination[9]

Next, T.G.R. challenges the ALJ's conclusion that "allegations concerning the intensity, persistence and limiting effects of [E.S.G.R.'s] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." [Doc. 12 at 16 (quoting [Doc. 9 at 20])].  She recounts T.G.R.'s and E.S.G.R.'s hearing testimony, [*id.*], and argues that her testimony about E.S.G.R.'s symptoms was consistent with the record, [*id.* at 16–17].  She then argues that "[a]n ALJ should accept a parent's statement of a child's symptoms," [*id.* at 17]; that an ALJ must "make specific findings concerning the credibility of the parent's testimony," [*id.*]; and that the ALJ's failure to make "a

---

[9] T.G.R. frames the ALJ's determination that T.G.R.'s testimony was not entirely consistent with the record as a "credibility determination." [Doc. 12 at 13 (emphasis omitted)].  However, the SSA has "eliminat[ed] the use of the term 'credibility'" from its policies and has "clarif[ied] that subjective symptom evaluation is not an examination of an individual's character." SSR 16-3P, 2017 WL 5180304, at *2 (S.S.A. Oct. 25, 2017).  Accordingly, the Court frames the ALJ's finding as a "consistency" finding.

14

defensible determination regarding the [consistency] of" T.G.R.'s testimony warrants remand, [*id.*].  She also asserts that the ALJ "incorrectly evaluated the intensity and persistence of [E.S.G.R.'s] symptoms," which also requires remand.  [*Id.*].

As for T.G.R.'s second argument—that the ALJ incorrectly evaluated the severity of E.S.G.R.'s symptoms—this argument is unsupported by any analysis or explanation as to which symptoms the ALJ erroneously assessed and is therefore insufficient to place the issue before the Court.  See [*id.*]; *United States v. Ray*, 899 F.3d 852, 862 n.4 (10th Cir. 2018) ("[A]rguments made in a cursory manner . . . are waived.").  Moreover, as explained above, this Court cannot reweigh evidence and can only assess the sufficiency of the evidence.  *Knight*, 756 F.3d at 1176; *J.S.M.*, 2023 WL 2033747, at *3.

Insofar as T.G.R. argues that the ALJ erroneously concluded that T.G.R.'s testimony about E.S.G.R.'s symptoms and their effects was not consistent with the record, the Court cannot conclude that remand is warranted on this basis.  T.G.R. argues that the ALJ "failed to make a defensible determination regarding the [consistency] of" T.G.R.'s testimony.  [Doc. 12 at 17].  It is unclear whether T.G.R. challenges the merits of the ALJ's consistency assessment, or whether she asserts that the ALJ failed to properly explain why she found that T.G.R.'s testimony about E.S.G.R.'s symptoms did not match the record.  Either way, the Court is respectfully unpersuaded.

The ALJ discussed in detail T.G.R.'s statements about E.G.S.R.'s symptoms and their limiting effects.  See [Doc. 9 at 20, 22].  But she also discussed record evidence that (1) could be construed to conflict with T.G.R.'s statements or (2) could be construed as contradictions within T.G.R.'s statements.  *See, e.g.*, [*id.* at 20 (noting that T.G.R. "provided somewhat contradictory answers" between October 2020 and May 2021

15

reports); *id.* at 21 (noting "conflicting information from the claimant and his mother . . . as to the efficacy" of E.S.G.R.'s medication)]; *compare* [*id.* at 22 (noting that T.G.R. stated that E.S.G.R. does not complete homework and has difficulty keeping up academically)], *with* [*id.* at 264–71 (a teacher survey indicating that E.S.G.R. has no problems acquiring and using information or attending and completing tasks, but noting an unusual degree of absenteeism)]. The ALJ also discussed, at length, the evidence she relied on to assess the severity and limiting effects of E.S.G.R.'s symptoms. [*Id.* at 18–24]. Therefore, the Court concludes that the ALJ adequately explained the basis for concluding that "allegations concerning the intensity, persistence and limiting effects of [E.S.G.R.'s] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." [*Id.* at 20]. To the extent T.G.R.'s argument could be construed as a challenge to the substance of the ALJ's consistency determination and a request that the Court reweigh the evidence in T.G.R.'s favor, the Court cannot do so. *Knight*, 756 F.3d at 1176.

The ALJ's decision was supported by substantial evidence. Accordingly, the Court will **AFFIRM** the Commissioner's decision.

## CONCLUSION

For the reasons set forth above, the Commissioner's decision is respectfully **AFFIRMED**.

DATED: March 3, 2025

BY THE COURT:

_____
Nina Y. Wang
United States District Judge